UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY FREGIA,<br><br>   Plaintiff,<br><br>   v.<br><br>DR. YUCHUI CHEN, et al.,<br><br>   Defendants. | Case No. 1:20-cv-01024 EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT GOSSO FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Mark Anthony Fregia ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this action. Plaintiff filed the complaint commencing this action on July 24, 2020. (ECF No. 1).

The Court screened Plaintiff's complaint and found that it stated cognizable claims against Defendant Gosso for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF No. 6.) The Court also found that Plaintiff failed to state any other claims. (Id.) The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint;

1

b. Notify the Court in writing that he does not want to file an amended complaint, and instead wants to proceed only on the claim against Lisa Gosso for deliberate indifference to serious medical needs; or c. Notify the Court in writing that he does not want to go forward on only the claims found cognizable by this order or file an amended complaint." (Id. at 12-13.)

On November 2, 2020, Plaintiff filed his response to the Court's screening order. (ECF No. 7.) Plaintiff stated that he wants to stand on his original complaint and requested that the Court issue findings and recommendations to a district judge consistent with the screening order. (Id.)

Accordingly, the Court issues these findings and recommendations to the district judge consistent with the screening order. Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

### I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.

(quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint:

On January 24, 2018, Plaintiff had a Telemed consultation with Dr. Yucai Chen at California Substance Treatment Facility, Corcoran CA ("SATF"). Dr. Chen renewed a prescription for EFEXOR 25 mg. daily. Plaintiff had been taking Efexor for approximately 15 years and was prescribed that medication at its maximum dosage of 225 mg[1] to treat a Cluster B personality disorder. In addition to the Efexor, Dr. Chen also prescribed Vistaril for a sleep disorder. This consultation was observed by Medical Assistant Lisa Gosso who had a trainee present with her.

The following day, January 25, 2018, Plaintiff was called to the Facility E Clinic for Lab. Upon arriving at the clinic and discovering that Lab consisted of allowing the Lab Tech to draw a blood sample, the Plaintiff refused due to religious reasons. While Plaintiff was discussing his religious beliefs with the Lab Tech, M.A. Lisa Gosso appeared and told Plaintiff that he would not receive his meds if he refused Labs. Plaintiff alleges that he and M.A. Gosso have had disagreements in the past. He felt that she harbored animosity towards him over a complaint he had previously made against her. He felt that Ms. Gosso had shown up at his Labs just to meddle.

That evening, Plaintiff's medications, including the Efexor, were not dispensed. When

---

[1] The Court notes that Plaintiff alleges both that the prescription was for 25 mg daily and 225 mg.

3

asked why he could not get his prescribed medication, he was told that M.A. Gosso had e-mailed Dr. Chen and had his medications discontinued.  He was also told that Ms. Gosso had specifically told the doctor that Plaintiff had "requested to be taken off his meds."

Plaintiff began having an anxiety attack and feeling suicidal.  The suicidal ideation was brought on by the prospect of having his Efexor abruptly stopped.  In the past, when he was not given his Efexor, he had suffered painful withdrawals.  Withdrawal symptoms included pain in muscles and joints, headaches, fever, night sweats, weird nightmarish dreams.  Another psychiatrist had told him that Efexor needed to be slowly weaned off in order to avoid withdrawal symptoms.

That evening, Plaintiff was placed in a crisis bed on suicide watch.  Withdrawal symptoms had already begun.  The next morning, mental health staff told Plaintiff that if he would agree to give lab work, they would give Plaintiff a dose of Efexor and then Dr. Chen could re-prescribe it when she came in.  Plaintiff set aside his religious practices and submitted to the blood draw.  However, Dr. Chen did not return to work for three more days.

Thus, Plaintiff suffered through the weekend with nothing but a bottle of Tylenol to relieve his withdrawal symptoms.  All medical staff seemed unsympathetic.  Plaintiff's case manager, Dr. Marcy Johnson, failed to intervene when Plaintiff told her of the need for urgent attention to his medical issues.  Additionally, C. Cryer failed to take adequate action against Defendant Lisa Grosso in processing Plaintiff's grievance.  The same applies to S. Gates, who failed to grant appropriate relief at the final level.

Plaintiff claims there was no medical reason to require a blood test as a prerequisite for a patient to take the specific medications at issue.  This is evidenced by the fact that the medications were prescribed prior to any blood test being performed.

Plaintiff attaches correspondence with California Correctional Health Care Services related to his health care grievance.  It is worth noting that the appeals office provided the following explanation in its response to Plaintiff's grievance:

> Mental health conditions can have medical causes.  Laboratory tests are often ordered by the psychiatrists to rule out medical causes of a mood, anxiety or thought disorder.  Identifying any underlying medical cause allows necessary

> treatment of the medical problem which can often leads [sic] to the resolution of the psychiatric problem. Doing a medical workup including necessary labs is therefore the current standard of care in psychiatry. In your case, a thyroid test was important to conduct as thyroid anomalies are a common cause of altered mood states. Labs are also needed at times to monitor a patient's health status while on psychiatric medications in order to avoid side effects or complications.

(ECF No. 1, at p. 15).

### III.     ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others

which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a

1   "plaintiff must show that the course of treatment the doctors chose was medically unacceptable
2   under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

3       Plaintiff alleges that Medical Assistant Lisa Gosso was deliberately indifferent to his
4   serious medical needs by having his Efexor prescription revoked when Plaintiff refused to get
5   his blood drawn for lab work, resulting in four days of withdrawal symptoms including suicidal
6   thoughts.  While the response by Health Care services indicates that there may have been a
7   medical reason for requiring lab work in order to prescribe the Efexor medication, drawing all
8   inferences in favor of Plaintiff at this time, and in light of the fact that Plaintiff was prescribed
9   the medication before having lab work done, the Court will recommend allowing a claim for
10  deliberate indifference to serious medical needs to proceed past screening against Defendant
11  Medical Assistant Lisa Gosso.

12      The Court recommends finding that Plaintiff's complaint does not state a claim against
13  any other defendant for deliberate indifference to serious medical needs.  As to Dr. Chen,
14  Plaintiff alleges that the doctor withdrew the prescription only after M.A. Gosso told the doctor
15  that Plaintiff had requested to be taken off his medication.  As to the other medical
16  professionals who allegedly seemed unsympathetic and failed to intervene, Plaintiff has not
17  alleged that they were authorized to prescribe Effexor, nor that they were aware of Plaintiff's
18  need for Effexor while Dr. Chen was away for the weekend.  As for the appeals administrators,
19  Plaintiff alleges that they failed to take adequate action against Lisa Gosso.  Given that Plaintiff
20  received the medication four days after it was discontinued, Plaintiff's allegations do not show
21  that the appeals administrators were preventing Plaintiff from receiving his medication; and
22  failing to discipline Defendant Gosso or to award damages does not state a claim for deliberate
23  indifference of serious medical needs.  Thus, even construing facts in favor of Plaintiff, the
24  Court recommends finding that the allegations in the complaint do not establish that any other
25  defendant was deliberately indifferent to serious medical needs.

### C.  First Amendment Right to Free Exercise of Religion

27  Plaintiff also claims that his First Amendment Right to Free Exercise of Religion was
28  violated when his medication Effexor was withdrawn after Plaintiff refused to submit to the

blood draw for lab tests.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend I. The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp*., 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].' " *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. *O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400.

*Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id*. (alteration in original) (quoting *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur,* 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. *Shakur,* 514 F.3d at 884–85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San*

*Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id*. (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id*. (citation and internal quotation marks omitted).

Plaintiff claims that he has a religious objection to having his blood drawn with needles. He also claims that his exercise of his religion was substantially burdened because he could not receive his medication without violating his religious belief against having his blood drawn. However, he does not state what religion he practices and how the objection to having his blood drawn is rooted in religious belief. The Court accordingly recommends finding that Plaintiff's complaint does not state a claim because there are insufficient facts to conclude that his belief that he cannot get his blood drawn is rooted in religious belief.

### D.  RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Plaintiff must allege facts demonstrating that defendant substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise. *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" *Hartmann*, 707 F.3d at 1124–25 (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)." *Int'l Church of Foursquare Gospel*, 673 F.3d at 1067 (citing *Guru Nanak*, 456 F.3d at 988). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann*, 707 F.3d at 1124–25 (citing *Warsoldier*, 418 F.3d at 995).

In a like manner to the First Amendment claim, the Court recommends finding that Plaintiff's complaint does not contain sufficient facts for the Court to conclude that the refusal to have his lab work done was due to a religious belief. Plaintiff has not identified his religion or in what way the lab work would violate a belief of that religion.

## IV.     RECOMMENDATIONS AND ORDER

The Court has screened the complaint and recommends finding that it states a cognizable claim against Defendant Lisa Gosso for deliberate indifference to serious medical needs in violation of the Eighth Amendment. The Court recommends finding that the complaint fails to state any other claims.

As Plaintiff was given leave to amend along with relevant legal standards, but chose to stand on his complaint rather than file an amended complaint, the Court does not recommend granting further leave to amend.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claims only on the claim against Lisa Gosso for deliberate indifference to serious medical needs; and

2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **November 19, 2020**              /s/ *Erica P. Grosjean*
                                            UNITED STATES MAGISTRATE JUDGE