UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. FREGIA,<br><br>            Plaintiff,<br><br>    v.<br><br>YUCUI CHEN, et al.,<br><br>            Defendants. | Case No.  1:20-cv-01024-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 40)<br><br><u>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS</u> |

Plaintiff Mark A. Fregia ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Before the Court is Defendants Gosso and Johnson's[1] ("Defendants") motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act. (ECF No. 56.) The matter was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(17). For the following reasons, the Court recommends that Defendants' motion for judgment be granted.

///

///

///

---

[1] The motion was not brought on behalf of Defendant Chen and does not address any claims brought against this defendant. (*See* ECF No. 44.)

1

## I. BACKGROUND

### A. Plaintiff's Claims

Plaintiff's operative First Amended Complaint ("FAC") alleges, in relevant part, that Defendant Gosso withheld Plaintiff's Effexor on or about January 25, 2018, causing Plaintiff to suffer severe withdrawal symptoms. (ECF No. 16.) Withholding Effexor was against the California Department of Corrections and Rehabilitation's ("CDCR") and the manufacturer's protocols, and Defendant Gosso was aware that Plaintiff would suffer withdrawal symptoms if he was not slowly weaned from the prescription. (*Id.*) Plaintiff alleges that Defendant Gosso withheld his Effexor because Plaintiff had filed a complaint against her. (*Id.*)

The FAC also alleges that Defendant Johnson knew Plaintiff was experiencing withdrawal symptoms, including suicidal thoughts, due to Defendant Gosso withholding his Effexor. (ECF No. 16.) Plaintiff asked to receive a refill and, contrary to protocol, Defendant Johnson neither permitted Plaintiff to see a psychiatrist nor ordered him into crisis management. (*Id.*) Defendant Chen also knew that Effexor's protocol required weaning Plaintiff off of his medication and she improperly ordered that his prescriptions be withheld, causing Plaintiff to suffer withdrawal symptoms. (*Id.*)

The Court screened the FAC and found that it stated cognizable claims for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants Gosso, Chen, and Johnson, and for retaliation in violation of the First Amendment against Defendant Gosso. (ECF Nos. 17-18.)

### B. Motion for Summary Judgment

Defendants' Motion

On February 18, 2022, Defendants filed their motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. (ECF No. 40.) Defendants concede that Plaintiff submitted a grievance, SATF HC 1800000647, related to his Effexor being suspended on or about January 25, 2018. (ECF No. 40-3 at 4; *see also* ECF No. 40-4 at Ex. C.) However, Defendants argue that this grievance was insufficient to exhaust Plaintiff's Eighth Amendment claim against Defendant Johnson or his First Amendment claim against Defendant Gosso because it did not contain any allegations involving these claims. (ECF No. 40-3 at 8-11.)

2

Plaintiff's Opposition

On April 21, 2022, after timely requesting an extension, Plaintiff filed his opposition to the motion for summary judgment. (ECF Nos. 41-43.) Plaintiff argues that he expected to have three levels of appeal to explain his issues, rather than two levels, and planned to add facts regarding Defendant Johnson's name after the second level of review. (ECF No. 43 at 2.) However, the document he received back was "altered" and this confused him. (*Id.*) Further, Plaintiff did not receive notice of the 2019 changes in grievance procedures, and the forms were only recently changed to hard copy. (*Id.* at 3.) Defendants should have screened Plaintiff's initial submission and given him instructions on how to fix the issue. (*Id.*)

As to the retaliation claim against Defendant Gosso, Plaintiff argues that this claim was "clearly described" in his grievance. (ECF No. 43 at 9.) Additionally, there was a typo in the FAC stating that Defendant Gosso retaliated against him based on a complaint Plaintiff made several months earlier, but in reality Defendant Gosso's retaliation was based on verbal complaints he made during a telehealth consultation with Doctor Chen on January 24, 2018. (*Id.* at 9-11.)

Defendants' Reply

Defendants filed a reply on May 2, 2022. (ECF No. 44.) Defendants argue that Plaintiff's confusion regarding the grievance process does not excuse him from failing to exhaust his claim against Defendant Johnson. (*Id.* at 2.) Plaintiff's argument that he intended to add facts regarding Defendant Johnson is unconvincing because neither the prior three-level process nor the current two-level process allow prisoners to include new information on appeal that was not included on the original form. (*Id.* at 3.) The fact that Plaintiff did file and exhaust the grievance at issue also shows that he knew about the health care grievance procedure. (*Id.* at 3-4.) Additionally, Plaintiff's grievance did not put prison officials on notice of any retaliation claim against Defendant Gosso as it did not indicate Defendant Gosso suspended Plaintiff's medication because of any complaints Plaintiff made. (*Id.* at 5.)

The motion was deemed submitted on the record without oral argument following submission of the reply. E.D. Cal. L.R. 230(l).

///

///

3

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only

4

draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn . . ."; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n.2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed . . . ." *Anderson*, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino II*, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* However, "the ultimate burden of proof remains with the defendant." *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

**B.     Exhaustion**

CDCR employs an administrative process for health care grievances for "applied health care policies, decisions, actions, conditions or omissions that have a material adverse effect on [a prisoner's] health or welfare" Cal. Code Regs. tit. 15 § 3999.226(a) (2018). To initiate a health care grievance, a prisoner submits CDCR Form 602 HC within thirty calendar days and must "clearly and coherently" include "all information known and available to him or her regarding the issue." *Id.* at § 3999.227(b), (g). Moreover, "[t]he grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." *Id.* § 3999.227(g)(1). Health care grievances are screened to identify whether they should be rejected and to ascertain whether they should be addressed as a health care staff complaint. *Id.* at §§ 39999.228, 3999.231(b). Health care grievances are subject to two levels of review: (1) an institutional level of review, and (2) a headquarters' level of review, which exhausts administrative remedies. *Id.* at § 3999.226(a)(1), (g). Rejection or withdrawal of a healthcare grievance does not exhaust administrative remedies. *Id.* at § 3999.226(g).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey,* 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 578 U.S. 632, 640, 642 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Reyes*, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

There are no "special circumstances" exceptions to the exhaustion requirement. *Ross*, 578 U.S. 648. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. The *Ross* Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . As all those courts have recognized, such interference with an inmate's pursuit

6

> of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Ross*, 578 U.S. 643–44. "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

### III.   DISCUSSION

#### A.   Undisputed Facts[2]

Plaintiff was housed at the California Substance Abuse Treatment Facility, Corcoran ("SATF") at all times relevant to the FAC. (Undisputed Material Fact "UMF" No. 1, ECF No. 40-2.) SATF has a health care grievance process for inmates to grieve issues relating to their health care. (UMF 19.) Health care grievances and appeals involving inmate medical, dental, and mental health care issues are processed by California Correctional Health Care Services ("CCHCS"). (UMF 8.) The Health Care Correspondence and Appeals Branch ("HCCAB") receives, reviews, and maintains all health care grievances and appeals accepted for the final headquarters level review in the inmate health care grievance and appeal process, and renders decisions on those grievances and appeals. (UMF 9.) All levels of health care grievances and appeals, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System ("HCARTS"). (UMF 10.) HCARTS also tracks health care grievances and appeals that were received and ultimately rejected, including the

---

[2] Plaintiff did not respond to Defendants' itemized Statement of Undisputed Facts as required under the Local Rules. *See* E.D. Cal. L.R. 260(b). Plaintiff was provided with a *Rand* warning informing him of the summary judgment requirements of and of the Local Rules' directive that, "[f]or each of the facts listed in the defendant's Statement of Undisputed Facts, you must admit the facts that are undisputed, and deny the facts that are disputed." (ECF No. 40-2.) Thus, the Court has taken facts set forth in Defendants' statement as undisputed. However, Plaintiff did attach evidence to his opposition. (*See* ECF No. 43.) Additionally, the FAC is verified. (ECF No. 16.) *See Jones v. Blanas,* 393 F.3d 918, 922-23 (9th Cir. 2004) (nothing that, where the plaintiff was proceeding *pro se,* the court was required to "consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct"). The Court has thus considered this evidence in determining whether the undisputed facts entitle Defendants to summary judgment under the applicable legal standards.

7

reason for the rejection. (UMF 11.)

According to a review of Plaintiff's HCARTS, Plaintiff submitted four inmate health care grievances in 2018 after January 24, 2018. (UMF 22.) Of the four grievances, only one, SATF HC 180000647, relates to the events that allegedly transpired on or about January 25, 2018, as described in the FAC.[3] (UMF 23.) SATF HC 180000647 was received by the Health Care Grievance Office on January 30, 2018, and states:

> On or around 1-24-18, I was forced into consulting w/ my Pschyatrist Dr. Chen, in the company of a 3x's obese recorder (perhaps a nurse or tech) and her trainee. This violated my right to dr./patient confidentiality. I don't know the 'recorder's' name, but am sure you can pinpoint her based on my description. Dr. Chen changed and replaced meds that I requested, then renewed them on this day. The following day she suspended my meds (all) because I exercised title 15 3351(e) 'right to refuse meds' including labs. This was done on 1-25-18, after I refused to give blood due to my religious beliefs. I recognized the obese nurse as the women that informed me 'I wont get my psych. meds if I don't do labs.' That day, her threat was affirmed and I was forced to go 'man down suicidal' because Dr. Chen put, in her order to suspend my meds, that she would take issues up w/ me at my next M.H. Committee. I knew committee wouldn't be held for several days, and that most likely I'd be suffering painful withdraws during that time. I was also transferred to CTC, basically naked and it was less than 50 including windchill factors, while on the 'golf cart.' The next morning I went against my religious belief, gave labs to aviod withdraws.

(ECF No. 40-4 at 30-32.) (Errors in original.) Plaintiff's grievance requested the following action:

> To be removed from Dr. Chen's caseload because of the conflicting interest that became present, due to her illegal actions which range from illegally suspending my psych meds to violating my civil rights (ie religious practice and 'right to refuse medication (labs). Since I was forced to give blood inspite of my religious belief, I want $500,000. Included in this amount is my fee for dehumanization, pain and suffering (while inside the cage in e-medical, for approx. 4 hrs) and on the way to C.T.C. (basically naked). Lastly, in terms of monetary compensation, my fee of 50k per medications missed during this time, comes to approx. 100k as result of continuous days that my meds were suspended and not given. Also, I would like Dr. Chen fired for her abuse of her authority/position. I know that this pattern has been ongoing and long going, as a result of my investigation. Also the obese Nurse/Tech should be fired as well for her parts, of which I've already explained on this document.

(*Id.*) (Errors in original.)

On March 14, 2018, SATF reviewed Plaintiff's treatment and changed Plaintiff's psychiatrist from Dr. Chen to Dr. Gill, which was the only intervention by SATF. (UMF 28.)

---

[3] In SATF HC 1800816, Plaintiff requests to receive his night medication at 4:45 in the diabetic line instead of coming back to receive it at 8:00 p.m. (UMF 32.) In SATF HC 1800996, Plaintiff requests "medical assistant Gozlo's first initial and last name (correct spelling) in order to send a complaint to consumer affairs and headquarters." (UMF 33.) In MCSP HC 18002123, Plaintiff describes a disagreement with treatment concerning Dr. Weiss and a medication change from Keep on Person to Direct Observation Therapy. (UMF 34.)

Plaintiff appealed SATF's institutional-level decision to HCCAB for headquarters-level review. (UMF 29.) When asked to identify the reason why he was dissatisfied with the institutional level response, Plaintiff stated:

> If a thyroid test was the issue, why were test I've refused for years included i.e. A1C, etc.)? The magnitude of what's transpired is being ignored. I'm asking for terminations and compensation for what I was put through on that day. Medical Assistant Gozlo purposely changed the content of what I expressed about my religious belief, preference, and the right to refuse labs (giving blood). Dr. Chen couldn't have legally, abruptly stopped these meds., even if the request had come from my own mouth. The fact that she did, based on a 3rd party, that's not even a nurse, should be grounds for both their terminations. I had to spend the night in 'suicide watch,' begging for my meds because of her. In fact, the psych, doctor's in C.T.C, illegally sent me home w/ enough Effexor and Visteryl to last me the weekend. They were attempting to cover up Dr. Chen's obvious illegal activity, w/o signing their names to any attached orders.

(ECF No. 40-4 at 35.) (Errors in original.) On July 27, 2018, HCCAB issued its headquarters-level response, exhausting administrative remedies. (UMF 31.)

**B.     Analysis**

Here, it is undisputed that SATF has a process in place for administrative grievances related to health care issues, and that an inmate must process his grievance through the second level of review in order to exhaust administrative remedies. It is also undisputed that Plaintiff submitted grievance SATF HC 180000647, the first level of review changed Plaintiff's psychiatrist from Dr. Chen to Dr. Gill, Plaintiff appealed the first level of review decision, and the second level of review provided no further intervention.

Plaintiff does not dispute that SATF HC 180000647 did not contain facts related to his claim against Defendant Johnson, and instead argues that he was excused from failing to include these facts in his grievance as discussed further below. (*See* ECF No. 43.) However, Plaintiff argues that SATF HC 180000647 did include facts related to Defendant Gosso's retaliation against him, and he therefore properly exhausted administrative remedies as to this claim. (*See id.*) Specifically, Plaintiff describes a verbal complaint he made to Defendant Gosso on January 24, 2018 while she recorded his telemed consultation with Defendant Chen, as well his suggestion that Defendant Gosso introduce her trainee next time to make her patients feel more comfortable. (*Id.* at 9.)

///

The undersigned finds that SATF HC 180000647 "failed to 'alert[ ] the prison to the nature of the wrong for which redress is sought' and provide sufficient information 'to allow prison officials to take appropriate responsive measures'" with respect to the facts underling Plaintiff's medical deliberate indifference claim against Defendant Johnson and his retaliation claim against Defendant Gosso. *Reyes*, 810 F.3d at 658 (alteration in original) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120, 1121 (9th Cir. 2009)). The submitted grievance complained of Defendant Chen and Defendant Gosso's involvement in changing Plaintiff's medications after he refused a blood draw due to religious reasons. The grievance did not set forth any facts indicating that Defendant Gosso acted in response to any complaints Plaintiff made about her or for a reason other than Plaintiff's refusal to submit to labs. Likewise, the grievance did not contain any facts indicating Defendant Johnson knew Plaintiff was experiencing withdrawal symptoms, refused to help him, ordered that his prescriptions be withheld, or was otherwise involved in the events described in the grievance. While a grievance "need not include legal terminology or legal theories," there is nothing in the grievance that would alert prison officials to the factual basis for Plaintiff's theories, *i.e.* that Defendant Gosso acted because of complaints Plaintiff made about her,[4] or that Defendant Johnson, or any unnamed individual other than Defendant Gosso and Defendant Chen, was involved in the denial of Plaintiff's prescriptions. *See Reyes*, 810 F.3d at 659.

Therefore, the Court finds that SATF HC 180000647 did not exhaust Plaintiff's administrative remedies regarding his retaliation claim against Defendant Gosso or his medical

---

[4] Plaintiff contends that there is a material dispute of fact that precludes summary judgment as to the retaliation claim against Defendant Gosso because there was a typo in the FAC:

> The portion of that document that mistakenly read 'Defendant Gosso was not authorised to cancel the Plaintiff's medications. She was angry at him for filing a complaint against her 'several months earlier' can be found at the bottom of page 5 (SEE Exibit D)
>
> That portion of the complaint, based on Claim III against Dr. Chen is the only time that misprint occurred. Throughout both complaints plaintiff always referred to MA Gosso's retaliation on him, stemmed from 'a prior or recent complaint.'

(*Id.* at 11.) (Errors in original.) The error Plaintiff describes does not create a material dispute of fact precluding summary judgment because SATF HC 180000647 did not contain any description of any complaints at all, recent or otherwise, or any facts indicating that Defendant Gosso acted because of those complaints. Therefore, this error does not alter the Court's finding that Plaintiff failed to exhaust administrative remedies regarding his retaliation claim against Defendant Gosso.

deliberate indifference claim against Defendant Johnson. Further, it is undisputed that Plaintiff did not submit any other grievances regarding the facts supporting these claims. As Defendants have carried their burden to show that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy as to his claims against Defendant Johnson or his retaliation claim against Defendant Gosso prior to commencement of the instant lawsuit, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino II*, 747 F.3d at 1172. However, "the ultimate burden of proof remains with the defendant." *Id.*

Plaintiff first argues that the administrative exhaustion procedure was unavailable to him because he expected to have three levels of appeal to explain his issues, rather than two levels. (ECF No. 43 at 2.) Specifically, Plaintiff's grievance was returned to him after the second level of review and "[i]t had been altered, by X'ing out the section he intended to place the deliberate indifference claim on Dr. Johnson." (*Id.*) Because the document was altered, Plaintiff could not put Defendant Johnson's name on the form. (*Id.* at 6.) Plaintiff's name was also "forged" on the health care grievance appeal form, which confused him. (*Id.* at 2, 23.)

However, as Defendants note, neither the current two-level nor the previous three-level process of review allowed Plaintiff to add new facts to his grievance on appeal. (*See* ECF No. 44 at 3.) Plaintiff's assumption that he could add additional facts concerning Defendant Johnson on appeal was accordingly not reasonable. Thus, prison officials did not interfere with Plaintiff's ability to take advantage of the grievance process or otherwise make administrative remedies unavailable to Plaintiff by altering the health care grievance appeal form. *See Stowers v. Hrabko*, 2020 WL 6075654, at *6 (E.D. Cal. Oct. 15, 2020) ("A reasonable but mistaken belief is not, as plaintiff contends, an exception to the exhaustion requirement.").

Plaintiff next argues that the administrative grievance process was unavailable to him because he did not receive notice of the 2019 changes in grievance procedures. (ECF No. 43 at 3.) Additionally, the forms have "only recently been changed to a hard copy, of which is now official and can be understood." (*Id.*) This "glitch" has "spanned for years" and "resulted in thousands of prisoners suffering because of a prejudice that has also violated their due process[.]" (*Id.* at 4.)

11

Defendants' policy was unlawful and unreasonable and they should have screened Plaintiff's initial submission and given him instructions on how to fix the issue. (*Id.*)

Plaintiff's argument is conclusory and does not address how changes in procedure in 2019 made the administrative grievance procedure unavailable to him in 2018 when he submitted SATF HC 180000647 and exhausted his appeal. As Defendants note, Plaintiff successfully filed and exhausted SATF HC 180000647, as well as many other grievances, indicating that he had notice of the administrative grievance procedures and they were effectively available to him. (*See* ECF No. 44 at 4.) Likewise, Plaintiff's has not established that the prior versions of the grievance forms were so opaque that the administrative procedure became, practically speaking, incapable of use. *See Ross,* 578 U.S. at 643-44. Indeed, having reviewed SATF HC 180000647, there is nothing on the face of these documents indicating that they cannot be understood as Plaintiff contends, and Plaintiff does not explain what is confusing about these forms. Further, although prison officials are obligated to screen grievances to identify whether they should be rejected or addressed as a staff complaint, Plaintiff does not identify any basis for an obligation to screen grievances for additional facts that may be included. Nor is it clear how prison officials could have instructed Plaintiff to include these additional facts when there was nothing in the grievance putting them on notice of their existence.

In light of the foregoing, the Court finds that Defendants have established that there is no genuine dispute that Plaintiff failed to exhaust his Eighth Amendment medical deliberate indifference claim against Defendant Johnson and his First Amendment retaliation claim against Defendant Gosso. Therefore, the undersigned will recommend that Defendants' motion for summary judgment be granted and that only these claims be dismissed without prejudice for failure to exhaust.

## IV.     CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 40) be GRANTED; and
2. Plaintiff's claim for deliberate indifference to serious medical needs in violation of the First Amendment against Defendant Johnson and for retaliation in violation of the First Amendment against Defendant Gosso be dismissed without prejudice

because Plaintiff failed to exhaust his available administrative remedies before filing this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 30, 2022**         /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE