UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. FREGIA,<br><br>    Plaintiff,<br><br>v.<br><br>YUCUI CHEN, et al.,<br><br>    Defendant. | Case No. 1:20-cv-01024-NODJ-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED, IN PART, AND DENIED, IN PART<br><br>(ECF No. 59)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

    Plaintiff Mark Fregia is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 4, 16). This case proceeds on Plaintiff's claims that Defendants Yuchui Chen and Lisa Gosso were deliberately indifferent to his serious medical needs by purportedly denying him medications while he was confined at the Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California. (ECF Nos. 18, 57).

    Defendants now move for summary judgment, arguing that the evidence shows that they were not deliberately indifferent to Plaintiff's serious medical needs and that they are entitled to qualified immunity. (ECF No. 59).

    For the reasons explained below, it is recommended that Defendants' motion for summary judgment be granted to the extent that Defendants request dismissal of Plaintiff's deliberate

1

indifference claim against Defendant Chen. However, it is recommended that the motion be denied to the extent that Defendants request dismissal of Plaintiff's deliberate indifference claim against Defendant Gosso.

## I. BACKGROUND

### A. Plaintiff's Operative Complaint

Plaintiff's verified first amended complaint alleges,[1] in relevant part, that he had a telemedicine appointment with Defendant Chen, a psychiatrist, on January 24, 2024.[2] He was taking 225 mg of Effexor at the time to treat his Cluster B personality disorder and Chen renewed his prescription for Effexor and prescribed Vistaril for his sleep disorder. Also present at Plaintiff's appointment was Defendant Gosso, a medical assistant.

On January 25, 2018, Plaintiff was called to a prison clinic for lab work. When he arrived, he was told that a blood sample would be drawn. However, due to his religious beliefs, he told the lab technician that he would not consent to a blood draw. During this discussion, "Gosso appeared and rudely interjected with her uninvited opinions that turned into threats of withholding Plaintiff's medication if he would not consent to labs." At this time, "Gosso harbored animosity towards [] Plaintiff over a complaint he had recently made against her." Plaintiff believes that Gosso showed up to "meddle in [his] affairs . . . simply to get back at him for his complaint."

That evening, Plaintiff went to pill call and learned that his medications, including Effexor, could not be dispensed because "Gosso had e-mailed his doctor and had his medications discontinued." He was also told that Gosso had specifically told the doctor that he "requested to be taken off his meds" but "this was a lie." But even if he had requested to be taken off his meds, "Gosso knew that protocol dictated that a person on 225mgs of Effexor had to be slowly weaned off of the medication to prevent painful withdrawal symptoms." He claims that Gosso "intentionally used her position to abuse and manipulate the medical protocols to do harm to the Plaintiff" as she knew that he "would begin to experience painful withdrawal symptoms within 24 hours of missing a dose of his medication."

---

[1] *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56 . . . [if it is] based on personal knowledge and set forth specific facts admissible in evidence.").

[2] For readability, minor alterations—such as altering capitalization, punctuation, and spelling—have been made to some of Plaintiff's quotations without indicating each change.

That night Plaintiff began to experience withdrawal symptoms, and by the morning, they were severe. Plaintiff had "pain in his joints and muscles, running nose, headaches, and nausea." Because Plaintiff had previously had withdrawals from Effexor, he knew his symptoms would progressively worsen, which "led to panic, suicidal ideation and he eventually ended up in a crisis bed under suicide watch that evening."

Plaintiff contends that "Dr. Chen was derelict in her duties as a physician when she allowed Defendant Gosso to have her cancel the Plaintiff's medications with just a phone call" because "she knew of the harmful properties of the drug when the proper methods of stopping the medication was not followed." He alleges that, because Chen saw him the previous day, during an appointment that he agreed to take his medications, "she should have at least wanted a good explanation as to why he so suddenly wanted to stop his meds." And Chen did not follow proper procedures in him weaning off his medications. "To so easily let Defendant Gosso abuse the system and harm a patient makes Dr. Chen complicit and [the] most culpable of all Defendants in this matter."

### B.  Defendants' Motion for Summary Judgment

Defendants' motion for summary judgment argues that Defendant Chen was not deliberately indifferent to Plaintiff's serious medical needs because "even viewing the facts in the light most favorable to Plaintiff, and assuming the report about his request [to discontinue medications] was incorrect, there is nothing in the record to support that Dr. Chen knew that the report that she acted on was inaccurate."[3] (ECF No. 59-1, p. 14).

As to Defendant Gosso, the motion argues that she "appropriately reported the developments surrounding Plaintiff's lab refusal to Dr. Chen, and that she could not have placed Plaintiff's medications on hold because it is not within her discretion as a medical assistant." (*Id.* at 19). Further, "[t]here is no evidence that Gosso knew by making the report, that Dr. Chen would place Plaintiff's medication on hold, that Gosso intended that to happen, or knew that it would place Plaintiff at a substantial risk of serious harm." (*Id.* at 20). Gosso also argues that she is entitled to qualified immunity because "[t]here are no authorities sufficient to put Defendants

---

[3] Because the Court finds this argument dispositive, it does not address Defendant Chen's other arguments, such as her argument that she is entitled to qualified immunity.

3

on notice that reporting Plaintiff's request to stop medications because he did not want to do blood work . . . was medically unacceptable under the circumstances." (*Id.* at 21).

In support of their motion, Defendants provide portions of Plaintiff's deposition, their own declarations, the declarations of other medical professionals, and various medical records regarding Plaintiff's treatment during the time period at issue here. (ECF Nos. 59, 73).

Plaintiff opposes summary judgment. (ECF No. 119). As an initial matter, he appears to argue that he should not have to respond to the motion based on other filings he has made in this case, *e.g.*, multiple motions for sanctions. Additionally, he generally accuses the Court of working with defense counsel against his interests in this case.

As to the merits of the motion, he generally repeats the allegations from his complaint, argues that Defendants have fabricated their account of some of the medical treatment that he received, and challenges the evidence that Defendants submitted in support of their motion for summary judgment. In support of his arguments, Plaintiff states that the factual assertions in his opposition are made under penalty of perjury. He also provides various exhibits, including correctional health care services procedures, discovery documents, and various medical records.

Defendants filed a reply, which repeats their arguments in favor of summary judgment and argues that Plaintiff presents only conclusory and speculative allegations that are insufficient to raise a genuine issue of fact for trial. (ECF No. 124, p. 5).

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

\\\
\\\

### III. DISCUSSION[4]

#### B. Legal Standards

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs by denying him his medications.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

---

[4] As an initial matter, Plaintiff argues in his opposition that this Court should not even address Defendants' motion for summary judgment. Referencing various filings in this case, including his numerous motions for sanctions, Plaintiff states that he should not have "to answer th[e] motion [for summary judgment] by Defendants." (ECF No. 119, p. 1). He generally accuses the Court of conspiring with defense counsel to hamper his litigation of this case. (*See id.* at 2-4). However, Plaintiff provides no developed argument or any evidence to substantiate such baseless allegations of a court conspiracy to hamper his litigation. Accordingly, to the extent that Plaintiff requests that the Court not rule on the motion for summary judgment, the request is denied.

6

establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

### C.  Defendant Chen

Turning to the merits, the essence of Plaintiff's claim against Defendant Chen is that she "was derelict in her duties as a Physician when she allowed Defendant Gosso to have her cancel [his] medications with just a phone call" and she should have demanded an explanation as to Plaintiff's purported statement, relayed by Gosso, that he wanted to stop his medications and, in any event, Chen should have weaned him off his medications. (ECF No. 16, p. 10).

Chen responds that, "even viewing the facts in the light most favorable to Plaintiff, and assuming the report about his request was incorrect, there is nothing in the record to support that Dr. Chen knew that the report that she acted on was inaccurate" so as to establish her deliberate indifference. (ECF No. 15, p. 14). Pertinent here, Chen, through her declaration, acknowledges that she placed Plaintiff's medications on hold on January 25, 2018, upon receipt of a report that "Mr. Fregia requested to stop all his medication because he did not want to do labs." (ECF No. 59-8, p. 4). She asserts that Plaintiff had the right, at his level of care, to refuse medication. (*Id.* at 4-5). However, she "made sure he was on [her] schedule to discuss the matter." (*Id.* at 4). She asserts that, from the relevant time period of January 25 to January 30, Plaintiff still ultimately received his medications from other providers, except for one day of Effexor because Plaintiff refused the medication, which he had a right to do. (ECF No. 59-8, pp. 1-8). And she states that, when she returned to work on January 29, she resumed his prescription. (*Id.* at 8). And on January 30, she had an appointment with Plaintiff. (*Id.* at 8).

While Plaintiff disputes most of Chen's account of the medical care that he received, he admits that he had the right to refuse his medication, that he did see some members of the mental

health staff at SATF during the relevant time period, that he received at least one dose of his medication during the relevant time period, and that when Chen returned to work on January 29, she resumed his medications and noted that she would see Plaintiff the next day. (ECF No. 119, pp. 19, 53, 68-73).

Even viewing the undisputed facts in a light most favorable to Plaintiff, he fails to put forth sufficient evidence that a reasonable jury could find in his favor as to Defendant Chen. Notably, while Plaintiff contends that Chen should have independently confirmed his purported request to stop his medications, he fails to present any evidence or argument that such failure amounts to deliberate indifference. Importantly, he fails to offer any facts or legal argument showing that Chen had any reason to doubt Gosso's representation that Plaintiff wanted to stop his medications, or that simply failing to verify another medical professional's factual representation itself was wanton. *See Estelle*, 429 U.S. at 105 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."). Although Chen stopped Plaintiff's medications, it was only for a short period of time, and she resumed them upon her return, thus indicating that she had no intention to deny medications that Plaintiff wanted to take.

Similarly, to the extent that Plaintiff claims that Chen should have weaned him off his medications, the Court cannot find any reason to deny summary judgment. As described above, the undisputed facts establish that Chen believed that Plaintiff had requested to stop his medications. And Plaintiff concedes that he could not be forced to take them. Plaintiff cannot both concede that he has the right to not take medication and then argue that Chen was required to administer it over his objection. *See McNeil v. Singh*, No. 1:12-CV-01005-RRB, 2013 WL 1876127, at *19, n.59 (E.D. Cal. May 3, 2013), *aff'd*, 559 F. App'x 624 (9th Cir. 2014) ("While it was clearly within McNeil's rights to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition.").

In light of the above circumstances, no jury could reasonably conclude that Defendant Chen subjectively knew of and disregarded a serious risk to Plaintiff's health. Accordingly, the Court will recommend that summary judgment be granted as to Defendant Chen.

\\\

### D. Defendant Gosso

The essence of Plaintiff's claim against Defendant Gosso is that, because he filed a complaint against her, she falsely reported to Chen that Plaintiff wanted to stop taking his medications because she knew that Chen would place them on hold and that Plaintiff would experience painful withdraw symptoms. (ECF No. 16, p. 5).

Gosso argues that she "appropriately reported the developments surrounding Plaintiff's lab refusal to Dr. Chen, and that she could not have placed Plaintiff's medications on hold because it is not within her discretion as a medical assistant." (ECF No. 59-1, p. 19). Further, "[t]here is no evidence that Gosso knew by making the report, that Dr. Chen would place Plaintiff's medication on hold, that Gosso intended that to happen, or knew that it would place Plaintiff at a substantial risk of serious harm." (*Id.* at 20).

The Court finds this argument unpersuasive. First, the fact that Gosso did not directly place a hold on Plaintiff's medications is of no consequence. A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Here, accepting the allegations in a light most favorable to Plaintiff, by falsely reporting that Plaintiff wanted to stop taking his medications, Gosso set in motion the hold on his medications by Chen, making Gosso liable under § 1983.

Gosso's related argument—that there is no evidence that she could have known or intended that Chen would place Plaintiff's medication on hold and that this could harm Plaintiff—is belied by the record. Notably, Plaintiff's allegations that Gosso was angry at him

9

because he filed a complaint against her and thus threatened to withhold his medications if he did not consent to lab work would support Plaintiff's claim that Gosso knew that falsely relaying that Plaintiff did not want to take his medications may result in Chen placing them on hold and that she had a motive to make a false report.

Moreover, Gosso's own declaration undermines her argument:

> [W]hen I worked as an MA in psychiatry, if an inmate refused to do labs, the phlebotomist or person doing the blood draw, would often report that information to me, and I would report that information to the patient's doctor. Similarly, if a patient stated he was requesting to stop medication, and I became aware of that information, I would report it to the patient's doctor.
>
> . . . . If a patient refused blood work in the morning, it would not be uncommon for the phlebotomist to have me talk to the patient. In my experience, sometimes patients reconsider after initially refusing, *when they are informed that they run a risk that their medication could be placed on hold by the ordering physician*. It would also not be uncommon for me to report blood work refusals, that I am made aware of, to the ordering doctor, in this case Dr. Chen. Because, I ran Dr. Chen's Tele-psychiatry line, I would be logged on the computer with her before she started seeing patients for the day and between appointments, and I would report that matter directly to her in private.

(ECF No. 59-6, pp. 2-3) (emphasis added). Elsewhere she states:

> The following day, January 25, 2018, at approximately 9:45 a.m., Dr. Chen documented, "Patient was seen yesterday, [t]oday MA reported that patient requested to stop all his medication because he does not want to do labs. He has been refusing labs for two separate occasions and lab RN attempted to explain, he was reportedly becoming verbally abusive and aggressive towards staff. He was reportedly claiming he will "602" everyone here and do[es] not wish to take his medications." Dr. Chen further documented "I will place his medications on hold and see him in IDTT to discuss the issue." Dr. Chen then notes "placed both Effexor 225 mg and Vistaril suspended." I do not have a recollection of this communication independent of Dr. Chen's note, *but I was Dr. Chen's MA at the time, and it would not have been uncommon for me to report to her a patient's refusal of blood work and a patient's request to stop all medication, so that she could address the matter*. As Dr. Chen's assigned MA, one of my duties was to keep her informed regarding her patients.

(*Id.* at 4) (emphasis added).

Notably, Gosso acknowledges that a doctor may place a hold on medication if a patient refused lab work and that she was Chen's medical assistant at the time and she would have been in a position to report Plaintiff's request to stop all medication. A reasonable inference is that she would have known in this case that falsely reporting that Plaintiff did not want to take his

medications because of required lab work would mean that Chen would put a hold on Plaintiff's medications.

Likewise, the Court rejects Gosso's contention that she could not have known that Plaintiff's failure to receive his medications would cause him harm. First, a reasonable person would know that withholding medications from a prisoner might cause them harm. *See Estelle*, 429 U.S. at 103 ("These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). Further, Gosso's declaration states that she had medical training as a certified medical assistant and one of her duties was providing patients with consent forms. (ECF No. 59-6, p. 2). She attaches Plaintiff's signed consent form to her declaration, which states, in part in a checked box:

> I understand that I may change my decision regarding the use of the medication(s) at any time by telling any member of my treatment team, though discontinuance of the medication will need to be discussed with my doctor. Should I decide to stop or decrease psychiatric medication(s) I have been informed to do this under the guidance of my staff *and absolutely not stop or decrease medication(s) suddenly or on my own*.

(*Id.* at 20) (emphasis added).

Simply put, it is reasonable to infer that Gosso, a medical professional, who provides a form to patients warning them to not stop or decrease their medications on their own would know that Plaintiff could face a substantial risk of harm by her putting in motion a series of events that led to Plaintiff's medications being stopped. And here, although Defendants dispute whether Plaintiff actually suffered harm from not taking the medications, Plaintiff claims, based on his personal knowledge of prior withdrawal symptoms, that he suffered pain in his joints and muscles, running nose, headaches and nausea and suicidal thoughts that led to him being placed in a crisis bed under suicide watch. (ECF No. 16, p. 5).

Accordingly, because there is a genuine dispute of material fact, the Court recommends that summary judgment be denied as to Plaintiff's claim against Defendant Gosso.

### E.     Qualified Immunity

Defendant Gosso also argues that she is entitled to qualified immunity because "[t]here

are no authorities sufficient to put Defendants on notice that reporting Plaintiff's request to stop medications because he did not want to do blood work . . . was medically unacceptable under the circumstances." (ECF No. 59-1, p. 21).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (quoting *Al–Kidd*, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> Binding caselaw "need not catalogue every way in which" prison conditions can be constitutionally inadequate "for us to conclude that a reasonable official would understand that his actions violated" an inmate's rights. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). Rather, "a right is clearly established when the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (alteration in original) (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)).

*Hampton v. California*, 83 F.4th 754, 769 (9th Cir. 2023)

Here, Gosso's argument relies on her own version of the facts, *i.e.*, that she simply reported Plaintiff's request to stop his medications, which led to medication hold by Chen. However, in light of the above disputed facts, the Court believes the relevant question is whether there is clearly established caselaw holding that a medical professional's intentional interference with a Plaintiff obtaining his medications violates the Constitution.

Notably, the Supreme Court addressed this issue long ago:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs *or by prison guards in*

> *intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.*

*Estelle*, 429 U.S. at 104–05 (internal citations and footnotes omitted, emphasis added).

Simply put, Gosso would have reasonably understood that falsely reporting that Plaintiff wanted to stop his medications, in an effort to deny him medical care, would violate Plaintiff's constitutional rights. Accordingly, she is not entitled to qualified immunity.

## IV.     CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 59) be granted, in part, and denied, in part.
    a. Defendants be granted summary judgment to the extent that they seek dismissal of Plaintiff's deliberate indifference claim against Defendant Chen.
    b. Defendants be denied summary judgment to the extent that they seek dismissal of Plaintiff's deliberate indifference claim against Defendant Gosso.
2. The case proceed only on Plaintiff's claim that Defendant Gosso was deliberately indifferent to his serious medical needs.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within thirty (30) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 8, 2024**                    /s/ *Erica P. Grosjean*
                                             UNITED STATES MAGISTRATE JUDGE

13